WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shannon Marie Albertson,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-24-02708-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Shannon Marie Albertson's appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 12-2). The appeal is fully briefed (Doc. 15; Doc. 17; Doc. 18), and the Court now rules.

**I.   BACKGROUND**

   **A.  Factual Overview**

Plaintiff was 45 years old on her date last insured of September 30, 2023. (Doc. 12-2 at 26; Doc. 15 at 4). She has a high school education and a history of past relevant work as a server. (Doc.15 at 4). On October 18, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning February 28, 2018. (Doc. 12-2 at 24). After an administrative hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claim. (*Id.* at 34). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 8). Plaintiff filed the present appeal following this unfavorable decision. (Doc. 1).

**B. The SSA's Five-Step Evaluation Process**

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. See *id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities," and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite [his] limitations," based on all

relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

Here, at Step One, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 28, 2018 through her date last insured of September 30, 2023. (Doc. 12-2 at 26). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "systemic lupus erythematosus and rheumatoid arthritis." (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 12-2 at 29). The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except she can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. She can occasionally climb, stoop,

>kneel, crouch, and crawl. She can frequently perform handling and fingering with both upper extremities.

(Doc. 12-2 at 29.)

At Step Four, the ALJ established that Plaintiff was capable of performing past relevant work as a server. (*Id.* at 33). At Step Five, the ALJ found that in addition to past relevant work, there were other jobs existing in significant numbers in the national economy that Plaintiff could also have performed, considering her age, education, work experience, and RFC. (*Id.*).

## II.     LEGALS STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial evidence" is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). It involves "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). This Court must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. See *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one

rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises two issues: (1) the ALJ failed to state specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom and limitation testimony, and (2) the ALJ failed to resolve an apparent conflict with the Dictionary of Occupational Titles ("DOT") in determining that Plaintiff could perform her past relevant work. (Doc. 15 at 2).

### A. Plaintiff's Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in failing to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective limitation and pain testimony. (Doc. 15 at 12). Conversely, Defendant argues that substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptom testimony. (Doc. 17 at 3).

#### 1. Legal Standard for Evaluating Subjective Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281).

The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). To be sufficiently specific, the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Moreover, "[t]he evidence

upon which the ALJ relies must be substantial." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Factors an ALJ may consider when determining credibility include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (quoting *Smolen*, 80 F.3d at 1284).

2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Here, the ALJ summarized Plaintiff's subjective symptom testimony as follows:

> The claimant testified at the hearing she was unable to work due to difficulty with concentrating due to lupus, and rheumatoid arthritis. The claimant reported she had infusions once a month for an hour. She alleged difficulty walking due to hip joints, and difficulty with activities like washing her hair or taking a shower. The claimant testified on a typical day she got her kids to school, she took a nap every day for an estimated 2 hours. She reported she stayed in touch with her family.

(Doc. 12-2 at 29–30).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms and did not make a finding that she was malingering. (*Id.* at 30). However, the ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

The Court finds that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's testimony. In addition to finding no objective medical evidence to support Plaintiff's descriptions of the limiting effects of her symptoms, the ALJ found that Plaintiff's testimony was inconsistent with Plaintiff's treatment history and medical exam results. (*Id.* at 32). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (quoting *Carmickle v.*

*Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

Furthermore, the ALJ identified the testimony he found not credible and explained what evidence undermined the testimony. *Holohan*, 246 F.3d at 1208. The ALJ examined Plaintiff's treatment records from her rheumatology clinic and found that "[d]espite the claimant's complaints, the examination noted no specific restriction in movement or strength." (Doc. 12-2 at 31). The ALJ pointed to a May 2020 medical examination where "the claimant noted she was not having much joint pain and she was engaging in yoga and walking." (*Id.*; *see* Doc. 12-10 at 64). The ALJ pointed to an August 2022 medical examination where Plaintiff indicated that yoga helps with her neck pain and reported doing yoga or walking 4 to 5 days per week for 30 to 90 minutes. (Doc. 12-2 at 31; *see* Doc. 12-16 at 9). The ALJ noted that Plaintiff's treatment history indicated that her treatments were effective and resulted in reports of improvements. (Doc. 12-2 at 27, 32). The ALJ explained that there are no treatment records assessing weakness consistent with Plaintiff's "allegations regarding frequency and severity of fatigue," but rather "review of systems frequently indicate the claimant denied fatigue." (*Id.* at 32).

Moreover, the ALJ found the medical opinion of reviewing consultant Dr. Shabnam Rehman persuasive because Dr. Rehman's opinion was consistent with and supported by the evidence available at the time of Dr. Rehman's assessment, including Plaintiff's allegations, activities of daily living, and available treatment records. (Doc. 12-2 at 32). The ALJ adopted Dr. Rehman's opined limitations in formulating Plaintiff's RFC at Step Three, except that the ALJ adopted "more restrictive handling and fingering limitations" based on updated treatment records and Plaintiff's testimony. (*Id.* at 29, 31–32; *see* Doc. 12-3 at 13–14; Doc. 12-10 at 78). Therefore, the Court finds that in discounting Plaintiff's testimony, the ALJ gave specific, clear and convincing reasons that were supported by substantial evidence.

    3. <u>Plaintiff's Argument Regarding Fatigue</u>

Plaintiff first argues that the ALJ erred in rejecting Plaintiff's complaints regarding the frequency and severity of fatigue as inconsistent with the record. (Doc. 15 at 10).

Plaintiff contends that "[t]hough treatment notes often reported that [Plaintiff] was negative for fatigue, many also reported that she was not working due to her symptoms of fatigue." (*Id.* at 11). Plaintiff points to medical reports from May 2018, March 2019, June 2019, July 2021, June 2022, and August 2022, where she was positive for fatigue. (Doc. 15 at 10–11; Doc. 18 at 3).

The May 2018 report indicated that Plaintiff was negative for fatigue and extremity weakness but reports a fatigue score of 80. (Doc. 12-10 at 9). The March 2019 and June 2019 reports indicated that Plaintiff was positive for fatigue and extremity weakness. (Doc. 12-12 at 35; Doc. 12-10 at 47). The July 2021 report indicated that Plaintiff was positive for fatigue but negative for extremity weakness. (Doc. 12-10 at 86). The June 2022 report indicated that Plaintiff was positive for fatigue and numbness in extremity but negative for extremity weakness. (Doc. 12-16 at 30). The August 2022 report indicated that Plaintiff was positive for fatigue and muscle weakness but negative for extremity weakness. (Doc. 12-16 at 38).

The ALJ cited to medical reports where Plaintiff was negative for fatigue and extremity weakness in May 2018, July 2018, October 2018, January 2019, October 2019, February 2020, May 2020, August 2020, March 2021, June 2021, October 2021, January 2022, April 2022, November 2022, and May 2023. (Doc. 12-2 at 27, 30–32; *see* Doc. 12-10 at 9, 13, 24, 30, 53, 60, 65, 70, 74, 80, 93, 98, 103; Doc. 12-14 at 4; Doc. 12-16 at 51; Doc. 12-17 at 14). The ALJ also cited to an August 2022 visit where Plaintiff was negative for fatigue but positive for muscle weakness. (Doc. 12-2 at 31; *see* Doc. 12-16 at 9). The August 2022 report also notes that Plaintiff reported doing yoga or walking 4 to 5 days per week. (Doc. 12-16 at 9).

Given that Plaintiff frequently denied fatigue and weakness, it was rational for the ALJ to conclude that Plaintiff's symptoms of fatigue were not as frequent, severe, or limiting as Plaintiff alleged. Even if a different factfinder could have possibly reached a different conclusion based on the record cited, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

conclusion must be upheld." *Thomas*, 278 F.3d at 954. Additionally, Plaintiff does not suggest how her intermittent symptoms of fatigue would impact the ALJ's determination that Plaintiff was not disabled.

### 4. Plaintiff's Argument Regarding Waxing and Waning Symptoms

Plaintiff further argues that with systemic lupus erythematosus, "waxing and waning" of symptoms is to be expected, and therefore a medical record indicating "intermittent" symptoms is not inconsistent with Plaintiff's testimony. (Doc. 15 at 11).

Plaintiff cites to *Smith v. Kijakazi*, 14 F.4th 1108, 1112–13 (9th Cir. 2021), as support. (Doc. 15 at 11). In *Smith*, the ALJ discredited the claimant's testimony as inconsistent with the record but only cited to evidence that contradicted the claimant's late-period testimony. *Smith*, 14 F.4th at 1113–14. The Ninth Circuit Court of Appeals held that the ALJ "erred by disregarding *all* of Smith's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony. *Id.* at 1113. The Court of Appeals reasoned that Smith may have been disabled for a qualifying portion of time, even if not for the full period of time alleged. *Id.* at 1114.

Here, however, the ALJ considered Plaintiff's entire longitudinal treatment history and cited to evidence spanning the period of alleged disability. (Doc. 12-2 at 30–32); *see Smith v. Berryhill*, 752 F. App'x 473, 475–76 (9th Cir. 2019) ("Smith correctly notes that fibromyalgia symptoms can wax and wane, but the ALJ did not cherry-pick the medical record . . . ."). After examining Plaintiff's entire longitudinal treatment history, including periods of waxing and waning severity of symptoms, the ALJ concluded that the "intensity, persistence and limiting effects" of Plaintiff's self-reported symptoms were inconsistent with the evidence in the record. (Doc. 12-2 at 30). Accordingly, the ALJ did not err in finding that Plaintiff's testimony regarding the severity and frequency of her symptoms was inconsistent with the evidence in the record.

### 5. Plaintiff's Argument Regarding the Effectiveness of Treatment

Additionally, Plaintiff argues that the ALJ erred in citing the "effectiveness of

- 9 -

treatment" as inconsistent with Plaintiff's testimony because "[t]he record does not support the conclusion that [Plaintiff] enjoyed sustained relief from her treatment regimen." (Doc. 15 at 11–12). Defendant counters that the ALJ properly found that Plaintiff's allegations were inconsistent with the improvement she achieved with treatment. (Doc. 17 at 4).

The ALJ found that Plaintiff's treatment for lupus and rheumatoid arthritis, "which notably consists of prescribed medications, creams, and injections, resulted in reports of improvements." (Doc. 12-2 at 32). The ALJ added that "[a]ccompanying these reports of overall feeling well were physical exam results, which routinely show the claimant was assessed with normal gait and balance, no edema, negative neurological tests, grossly intact sensation, and normal range of motion," but acknowledged that Plaintiff sometimes reported having tender points. (*Id.*).

An ALJ may discount a claimant's testimony based on effective treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The medical evidence indicates that some of Plaintiff's symptoms were effectively controlled by treatment. For example, the August 2020 report indicates that Plaintiff's rash cleared up in 1 week after she was given a topical steroid cream. (Doc. 12-10 at 70). The February 2022 report indicates that Plaintiff's facial rash was "slowly improving" after a month of using a topical cream. (Doc. 12-10 at 109).

Plaintiff specifically argues that substantial evidence does not support that treatment was effective for the joint pain in her hands, hips, and shoulders. (Doc. 15 at 11–12; Doc. 18 at 4–5). The Court agrees that the medical record demonstrates that Plaintiff's joint pain was not consistently controlled by treatment, as reports indicate that some treatments were not effective, Plaintiff experienced negative side effects with certain medications, or Plaintiff could not afford certain treatments such as physical therapy. (*See, e.g.*, Doc. 12-10 at 12, 45, 48, 52).

However, in formulating Plaintiff's RFC, the ALJ specifically took into account Plaintiff's recent treatment records that "showed consistent complaints regarding the

hands," and Plaintiff's testimony at the hearing regarding her hand pain. (Doc. 12-2 at 32). Based on this evidence, the ALJ "adopted more restrictive handling and fingering limitations," limiting Plaintiff to frequent handling and fingering with both upper extremities. (Doc. 12-2 at 29–30).

Similarly, the ALJ's summary of Plaintiff's treatment history acknowledged several treatment records where Plaintiff reported hip pain. (*See* Doc. 12-2 at 30–31). Despite numerous treatment records indicating that Plaintiff had no limitations in range of motion and no reported hip pain, the ALJ found that Plaintiff was limited to standing and walking for 6 hours in an 8 hour day, sitting for 6 hours in an 8 hour day, and occasional climbing, stooping, kneeling, crouching, and crawling. (Doc. 12-2 at 29–32).

Therefore, the Court finds that the ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony to the extent that it conflicted with the effectiveness of treatment.

### B. Plaintiff's Past Relevant Work

At the hearing, the ALJ asked the vocational expert ("VE") to assume a hypothetical individual with the same age, education, and work experiences as Plaintiff who was also limited to Plaintiff's RFC (including a limitation to frequent handling and fingering). (Doc. 12-2 at 62–63). The VE testified that such a person could perform Plaintiff's past relevant work as a server, DOT (4th ed. 1991) § 311.477-030, 1991 WL 672688, and could perform other work in the national economy, including routing clerk, *id.* § 222.687-022, 1991 WL 672133, inspector and hand packager, *id.* § 559.687-074, 1991 WL 683797, and sales attendant, *id.* § 299.677-010, 1991 WL 672643. (Doc. 12-2 at 61–63). Relying on the VE's testimony, the ALJ found that Plaintiff could perform her past relevant work as a server, and in the alternative, Plaintiff could perform other work that existed in significant numbers in the national economy. (*Id.* at 33–34).

Plaintiff argues that the ALJ erred by failing to specify whether Plaintiff "could frequently perform handling and fingering independently or in combination," leading to an apparent conflict with the DOT. (Doc. 15 at 15). Plaintiff contends that because

"frequently" is defined as existing "from 1/3 to 2/3 of the time," DOT (4th ed. 1991) App'x C, 1991 WL 688702, "[a] limitation to frequent handling *and* frequent fingering, by definition, amounts to constant use of the hands and fingers." (Doc. 15 at 14–15).

Defendant argues that Plaintiff's method of calculation "would lead to absurd results." (Doc. 17 at 9). The Court agrees. As Defendant points out, the server occupation entails frequent reaching and handling (1/3 to 2/3 of the time) and occasional fingering (up to 1/3 of the time). DOT (4th ed. 1991) § 311.477-030, 1991 WL 672688. Under Plaintiff's method of calculation, the server occupation would require using the upper extremities 5/3 of the day. (Doc. 17 at 9–10).

"For a difference between an expert's testimony and the [DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.* The ALJ did not err because there was no apparent or obvious conflict between the VE's testimony that Plaintiff could perform as a server, despite her handling and fingering limitations, and the DOT's general statement that serving requires frequent handling and occasional fingering. *See id.* at 808; DOT (4th ed. 1991) § 311.477-030, 1991 WL 672688.

The DOT describes the general tasks for a server as:

> Serves food to patrons at counters and tables of coffeeshops, lunchrooms, and other dining establishments where food service is informal: Presents menu, answers questions, and makes suggestions regarding food and service. Writes order on check or memorizes it. Relays order to kitchen and serves courses from kitchen and service bars. Observes guests to respond to additional requests and to determine when meal has been completed. Totals bill and accepts payment or refers patron to [cashier].

DOT (4th ed. 1991) § 311.477-030, 1991 WL 672688. Though the job description suggests a need for frequent handling and fingering, it does not suggest that constant handling and fingering with both hands is required. Additionally, an individual with a limitation to frequent handling and fingering is commonly considered able to perform the jobs of sales attendant and routing clerk. *See, e.g.*, *Allen v. Comm'r of Soc. Sec.*, No. CV-17-02543-

PHX-BSB, 2018 WL 6660009, at *6 (D. Ariz. Dec. 19, 2018) (routing clerk); *Nivison v. Comm'r of Soc. Sec. Admin.*, No. CV-21-00143-TUC-RM (JR), 2022 WL 7348471, at *2 (D. Ariz. Aug. 30, 2022) (routing clerk); *Garcia v. Berryhill*, No. CV 16-2592, 2017 WL 4142223, at *3 (C.D. Cal. Sept. 18, 2017) (routing clerk); *Jiminez v. Colvin*, No. CV 13-8676, 2014 WL 5464949, at *5 (C.D. Cal. Oct. 28, 2014) (sales attendant); *Helm v. Saul*, No. 19-cv-00983, 2020 WL 5039262, at *3 (E.D. Cal. Aug. 26, 2020) (sales attendant); *Johnson v. Berryhill*, No. 18-cv-00818, 2019 WL 2009530, at *4 (E.D. Cal. May 7, 2019) (sales attendant).

Accordingly, the Court finds that the ALJ did not err in concluding that Plaintiff could perform her past relevant work as well as other work that existed in significant numbers in the national economy.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 20th day of February, 2026.

James A. Teilborg
Senior United States District Judge